# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELAINE NERZIG AND ROBERT M.
NERZIG
50 Lorijean Lane
E. Northport, NY  11731

              PLAINTIFFS,

     v.

NOVARTIS PHARMACEUTICALS
CORPORATION
1 Health Plaza
East Hanover, NJ  07936

     and,

PROCTOR & GAMBLE
PHARMACEUTICALS, INC.
One Proctor Gamble Plaza
Cincinnati, OH  45202

     and,

AVENTIS PHARMACEUTICALS, INC.,
200 Crossing Blvd.
Bridgewater, NJ  08807

     and,

John Doe Corporations 1-4

          DEFENDANTS.

Case No. _____

JURY DEMANDED

## COMPLAINT AND JURY DEMAND

NOW COME plaintiffs Elaine Nerzig ("Mrs. Nerzig") and Robert M. Nerzig

("Mr. Nerzig") (collectively "Plaintiffs"), by and through counsel, and hereby sue

the Defendants, Novartis Pharmaceuticals Corporation ("Novartis" or

"Defendants"), a Delaware corporation with principal offices located at 1 Health

Plaza, East Hanover, New Jersey, 07936-1080, Proctor & Gamble Pharmaceuticals,

Inc. ("P&G" or "Defendants"), an Ohio corporation with principal offices located at

One Proctor Gamble Plaza, Cincinnati, Ohio, 45202, Aventis Pharmaceuticals, Inc.,

("Aventis" or "Defendants"), a Delaware corporation with principal offices located

at 200 Crossing Blvd., Bridgewater, New Jersey, 08807, and John Doe

Corporations 1-4 of unknown location, and for their cause of action state:

## I.    INTRODUCTION

1.    The drugs Aredia® and Zometa®, each produced and marketed by

Novartis and other related Novartis entities, each cause and precipitate

osteonecrosis of the jaw, mandible or maxilla bone among patients taking those

drugs. The prescription drug Actonel®, produced and marketed by P&G and

Aventis, causes and precipitates osteonecrosis of the jaw, mandible or maxilla bone

among patients taking those drugs. Osteonecrosis is bone death of an area of the

bone. Osteonecrosis of the jaw is a permanently disfiguring and extremely painful

condition, and can result in the complete loss of the patient's jaw bone as it has for

Mrs. Nerzig. Plaintiff Mrs. Nerzig in this action was infused with Aredia® and

prescribed and ingested Actonel®, and has suffered osteonecrosis of the jaw bone.

2

## II.    PARTIES

### A.    PLAINTIFFS

2.      Plaintiff Elaine Nerzig is a citizen and resident of the State of New York, residing in E. Northport, New York.  She was prescribed, purchased, and was infused with Aredia® and ingested Actonel®, and as a result thereof suffered severe osteonecrosis of the jaw, including pain, infection, and disfigurement, including the removal of her upper jaw.  As is the case with all patients suffering from this condition, Mrs. Nerzig is at risk for needing invasive procedures or surgeries in the future should her condition require it or should it deteriorate further.

3.      Plaintiff, Robert M. Nerzig, is the husband of Plaintiff Elaine Nerzig. Mr. Nerzig resides with his wife and is a citizen and resident of the State of New York, residing in E. Northport, New York.

### B.    DEFENDANTS

4.      Defendant Novartis is a Delaware corporation with its corporate headquarters located at 1 Health Plaza, East Hanover, New Jersey, 07936-1080.

5.      At all times relevant hereto, Novartis was engaged in the business of marketing, distributing, promoting, testing, labeling and selling the drugs Aredia® and Zometa®. Novartis, at present or in the past, markets and distributes Aredia®

3

and Zometa® throughout the world, including all fifty states in the United States, and throughout Maine.

6.    Defendant P&G is an Ohio corporation, with its principal place of business at One Proctor Gamble Plaza, Cincinnati, Ohio 45202.

7.    Defendant Aventis is a Delaware corporation, with its principal place of business at 200 Crossing Blvd., Bridgewater, New Jersey 08807.

8.    At all times relevant hereto, P&G and Aventis were engaged in the business of marketing, distributing, promoting, testing, labeling and/or selling the drug Actonel®. P&G and Aventis market and distribute Actonel® throughout the world, including all fifty states in the United States, and throughout the State of New York.

9.    Defendant John Doe Corporations 1-4 are manufactures of generic Aredia®, or pamindronate which, upon information and belief, Mrs. Nerzig has been prescribed and infused with. These drugs have the same effect, chemical nature and cause ONJ as Aredia® does. All allegations as to Aredia® apply to them.

### III.    JURISDICTION AND VENUE

10.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000 exclusive of interest and costs, and because this is an action by individual Plaintiffs who are citizens of a different state from the Defendants. Venue is proper in this

4

District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c).

## IV.    FACTUAL BACKGROUND

11.    Aredia® and Zometa® are classified as bisphosphonates and are prescribed for the management of metastatic disease to the bone and other bone diseases and conditions. Zometa® is Novartis's "successor" drug to Aredia®, as Aredia® was the first generation version of the drug Zometa®. Zometa® is now marketed by Novartis for all or almost all of the uses for which it previously marketed Aredia®. Aredia® and Zometa® have been approved by the United States Food and Drug Administration.

12.    Actonel®, chemical name risedronate sodium, is classified as a bisphosphonate and is prescribed for treatment of osteoporosis. Actonel® has been approved by the United States Food and Drug Administration.

13.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia®); zoledronic acid or zoledronate (Zometa®); ibandronate (Bondronat®); risedronate sodium (Actonel®); and alendronate (Fosamax®). The non-nitrogenous bisphosphonates include the following: etridronate (Didronel®); clodronate (Bonefos® and Loron®); and tiludronate (Skelid®). Aredia® and Zometa® contain a

5

nitrogen atom, whereas etridonate, clodronate, and tiludronate do not.

14.    Studies and medical practices report the frequent and common occurrence of osteonecrosis of the jaw in the users of the nitrogenous bisphosphonates, including Aredia®, Zometa® and Actonel®.

15.    Defendants knew or should have known of the disease phosphorus necrosis of the jaw or "phossy jaw," which appeared in the 1800s in persons mining white phosphorus and persons working in white phosphorus match factories. Phossy jaw had been nearly eliminated in the last century through industrial hygiene. The operation of the active ingredients in Aredia®, Zometa®, and Actonel® act and has the same effect as the phosphorus byproducts that caused "phossy jaw." It was foreseeable that any drug with the characteristics of Aredia®, Zometa®, and Actonel® would carry the risk of a "phossy jaw"-like reaction.

16.    The process by which old bone is taken away and new bone is created is called "remodeling." Both Aredia® and Zometa®, as well as Actonel®, were designed specifically to affect the "remodeling" process. Medical science knew, and therefore Defendants knew or should have known, that the jaw operates differently from other bones in the body in that it is subject to unique stresses, and accordingly "remodels" at a far, far greater rate than other bones in the body. Medical science knew, and therefore Defendants knew or should have known, that bisphosphonate drugs had a "site preference" for high remodeling areas, and

6

therefore would have a heightened effect on bones that remodel at a higher rate. Despite this knowledge not one dentist, maxillofacial surgeon, or other jaw or mouth bone specialist was used or assigned to any clinical trial done by Defendants for either Aredia® or Zometa®, or upon information and belief for Actonel®. This failure constituted a design flaw in every clinical trial and tainted all information provided to the FDA, other regulatory authorities, and peer reviewed journals. Nonetheless, despite any intention of examining the jaw or mouth and without utilization of any oral specialists in the clinical trials, Novartis's data captured at least six persons who self-reported ONJ-like symptoms in the Zometa® clinical trials. Novartis failed properly to report this to the FDA as part of Novartis's application for approval to market the drug, and further failed to report other adverse event reports to the FDA in a timely manner.

17.    Defendants knew and or should have known that bisphosphonates, including Aredia®, Zometa®, and Actonel® inhibit the activity of osteoclasts in the bone. Similarly, Novartis knew or should have known that bisphosphonates cause changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these changes appear to be cumulative in nature.

7

18.     Defendants also knew or should have known that these factors can progress to jaw necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

19.     On information and belief, in the year 2002 or before, Novartis was notified by one physician that he had dozens of cases in which patients taking Aredia® had experienced problems so severe that they had lost portions of their jaws. Other oral surgeons during that time frame and before had been reporting such problems to Novartis. On information and belief, Novartis had similar information as to adverse effects caused by its drug Zometa®, which has similar properties and effects as Aredia® and is marketed by Novartis as a more effective replacement for Aredia®. Nevertheless, Novartis did not undertake to advise physicians, notify the consuming public or place information about the possibility of suffering osteonecrosis of the jaw on their products until September of 2004. Novartis did not undertake to notify dental professionals until May of 2005. These efforts to date by Novartis to provide notice are not adequate to provide the public and health care professionals with the information needed to understand the risks inherent in the use of Aredia® and Zometa®, and indeed are themselves false and misleading.

20.     Starting in 2002 or before, bisphosphonate drugs were linked to osteonecrosis of the jaw. In 2003, one physician reported in the Journal of Oral and

8

Maxillofacial Surgery thirty-six cases of osteonecrosis of the jaw in patients who had received the intravenous bisphosphonate drugs Aredia® or Zometa®, made by another manufacturer. In 2004, another group of physicians reported in the same journal sixty-three cases of osteonecrosis of the jaw in patients taking bisphosphonate drugs, seven of whom took oral bisphosphonates, including one who took Actonel®. As a result of this and other information, Defendants knew or should have known that bisphosphonate drugs, including Actonel®, cause osteonecrosis of the jaw.

21.    Despite knowledge of the specific risk, the product literature and marketing materials prepared by Defendants and circulated to physicians and made available to patients contained no warning about the risk of development of osteonecrosis of the jaw. When large numbers of cases of osteonecrosis of the jaw began to appear in bisphosphonate users, the FDA recommended in a post-marketing review that P&G and Aventis change the Actonel® label to reflect the risk of osteonecrosis of the jaw. (Office of Drug Safety Postmarketing Safety Review, Jennie Chang, Pharm.D., August 25, 2004, at 3, available at the FDA's web site at: http://www.fda.gov/ohrms/dockets/ac/05/briefing/2005-4095B2_03_04-FDA-TAB3.pdf, attached hereto as Exhibit A.) Finally, in or around September 2005, P&G and Aventis changed the label to provide some

9

information to the medical community and consumers, however these efforts to date by P&G and Aventis to provide notice are not adequate to provide the public and health care professionals with the information needed to understand the true risks inherent in the use of Actonel®.

22.    After learning of the linkage between bisphosphonate drugs and osteonecrosis of the jaw, P&G and Aventis have failed timely to initiate studies to further investigate risks associated with the use of Actonel®.

23.    Further, P&G and Aventis had a duty fully to test and evaluate Actonel® prior to its introduction to the market, to ensure that the drug was safe to use for its intended purpose. Defendants failed to satisfy this duty.

24.    Plaintiff was prescribed and infused with Actonel® in the course of medical treatment and as a result of using that drug has endured severe pain and suffering, discomfort and disfiguration through osteonecrosis of the jaw. As a result of the osteonecrosis, Plaintiff suffers significant pain, difficulty in ingesting food normally, physical disfigurement, emotional distress and mental anguish, and has had her life span shortened. Plaintiff has incurred and will continue to incur medical and health care related costs and expenses to treat her condition. Plaintiff has been severely damaged in mind and in body, her enjoyment of life has been decreased, and she has been adversely affected in her avocations, career and/or employment.

25.    Defendants knew or should have known that Actonel® is a dangerously defective product which poses risks to human health, unknown and unknowable by the consuming public and medical professionals, including Plaintiff and her health care providers, unless disclosed by Defendants.

26.    Shortly after Novartis began selling Zometa®, reports of osteonecrosis of the jaw and other dental complications among users further exploded, indicating that Zometa® shared the class effects of the other nitrogenous bisphosphonates including Aredia®. Despite this knowledge, Novartis failed to implement further study of the risk of osteonecrosis of the jaw relative to Zometa® and Aredia®. Rather than evaluating and verifying the safety of Zometa® with respect to osteonecrosis of the jaw, Novartis proposed further uses of Zometa®, notably for osteoporosis under the names Reclast® or Aclasta® or other names, and upon information and belief, urged off-label uses on medical practitioners. Indeed, hundreds of articles have been written by qualified medical professionals and institutions and published in the top medical journals in the world demonstrating that Aredia® causes osteonecrosis of the jaw at a significant rate, and that Zometa® causes osteonecrosis of the jaw at an even higher rate.

27.    Rather than warn patients and the medical community, and despite knowledge by Novartis of increased risk of osteonecrosis of the jaw in patients

11

using Zometa®, Novartis continued and continues to defend and aggressively market Zometa®, while downplaying any unfavorable findings and overstating its benefits. This includes attempting to have it approved for use in the treatment of osteoporosis, and in seeking approval to market the drug for osteoporosis changing the name of the drug to "Reclast®," or "Aclasta®," or other names in order to conceal the link between the drug and osteonecrosis of the jaw.

28.    Because of the long "half-life" of the drugs Aredia®, Zometa®, and Actonel® in the body, the drug remains in the bones of persons who have been infused with it for at least many, many years or even permanently. For this reason, onset of osteonecrosis of the jaw or worsening of a patient's condition can occur years after infusions of the drug have been discontinued. For this reason, the label indications for Aredia® that call for an infusion of the drug every three-four weeks in perpetuity constitute an overdose. In addition, the cumulative effect of bisphosphonates are even more dangerous, but Defendants provided no label indication or other information to the public or medical community concerning the increased risk of multiple bisphosphonates.

29.    Despite knowledge of the specific risk, Novartis have failed timely to initiate studies to further investigate risks associated with the use of Aredia® and Zometa®.

30.    Further, Novartis had a duty fully to test and evaluate Aredia® and

12

Zometa® prior to their introduction to the market, to ensure that the drugs were safe
to use for their intended purpose. Novartis failed to satisfy this duty.

31.    Upon information and belief Novartis' Safety Reporting System (also
known as "STL") generated errors and affected the reporting of safety data to the
FDA and negatively impacted clinical trials. To date the system is obsolete and still
generating inaccurate safety data that is being submitted to the FDA.

32.    Novartis failed properly to conduct "dosing studies" to ascertain the
minimum effective quantities of the drugs Aredia® and Zometa®, and thereby to
establish the proper quantities of the drugs to be administered to patients and the
proper number of infusions which patients should receive. Identifying the
minimum effective dosage and setting the dosage instructions accordingly are
critical to avoiding the occurrence of side effects. Novartis, to maximize profit, for
most or all label indications specified a dosage and dosing schedule of Zometa® far
above any indicated for palliative effect. This dosing schedule, for most
indications, calls for an infusion of the drug every three to four weeks *forever*,
without any end point or time at which the use of the drug should be discontinued.
As a result of Novartis's failure to instruct as to the proper dosage, upon
information and belief the amount of the drug actually administered to Plaintiff
constituted an overdose, and contributed to the side effects and harm he suffered.

13

## COUNT I
## STRICT LIABILITY

33.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

34.    The Defendants were engaged in the business of manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising and otherwise distributing Aredia® and/or Actonel® in interstate commerce, which it sold and distributed throughout the world, including the State of New York.

35.    Mrs. Nerzig was using Aredia® and Actonel® in the manner for which they were intended, or in a reasonably foreseeable manner.

36.    Aredia® and Actonel® were expected to and did reach Mrs. Nerzig without substantial change in their condition as manufactured, created, designed, tested, labeled, sterilized, packaged, supplied, marketed, sold, advertised and otherwise distributed.

37.    Mrs. Nerzig was not aware of, and reasonably could not have discovered, the actual dangerous nature of Aredia® and Actonel®.

38.    Aredia® and Actonel® causes increased risks of osteonecrosis of the jaw upon consumption, and therefore constitute products unreasonably dangerous for normal use due to their defective design, defective manufacture, and the

14

Defendants' misrepresentations and inadequate facts disclosed to Mrs. Nerzig and her health care providers including, *inter alia*, the actual risk of developing osteonecrosis of the jaw and the permanent, irreversible harm associated with this disease.

39.    As a direct and proximate result of Defendants' manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Actonel® in interstate commerce, Mrs. Nerzig has suffered osteonecrosis of the jaw, and is at an increased risk of developing other diseases and conditions.

40.    The Defendant, therefore, is strictly liable to Mrs. Nerzig and Mrs. Nerzig is entitled to compensatory damages. Additionally, Defendants' conduct was so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of the consumers. Mrs. Nerzig therefore is entitled to punitive damages in an amount to be proven at trial.

## COUNT II
## NEGLIGENCE - NEGLIGENT MANUFACTURE

41.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

42.    It was the duty of the Defendants to use reasonable care in the manufacturing, creating, designing, testing, sterilizing, packaging, supplying, and

otherwise distributing Aredia® and Actonel®.

43.    Contrary to its duty, the Defendants failed: adequately and properly to test and inspect Aredia® and Actonel® so as to ascertain whether or not they were safe and proper for the purpose for which they were designed, manufactured and sold; adequately and properly to conduct a dosing study or otherwise to test Aredia® and Actonel® to ascertain the minimum effective dosage and to use this information to instruct users of the drug and/or their health care providers of the proper dosage so as to minimize the risk of development of osteonecrosis of jaw or other side effects; to utilize and/or implement a reasonably safe design in the manufacture of Aredia® and Actonel®; to manufacture Aredia® and Actonel® in a reasonably safe condition appropriate for the use for which they were intended.

44.    Defendants manufactured and sold Aredia® and/or Actonel®, which as constituted are and are hazards to Plaintiff's health, particularly in combination. Defendants' manufacture and sale of Aredia® and Actonel® as constituted caused Mrs. Nerzig to suffer adverse side effects and disease.

45.    Defendants were otherwise careless and negligent.

46.    As a direct and proximate result of Defendants' negligent, reckless, and careless manufacturing, creating, designing, testing, labeling, sterilizing, packaging, supplying, marketing, selling, advertising, and otherwise distributing Aredia® and Actonel® in interstate commerce, Mrs. Nerzig has suffered

16

osteonecrosis of the jaw, is at an increased risk of developing other diseases and conditions, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT III
## NEGLIENCE – FAILURE TO WARN

47.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

48.    It was the duty of the Defendants to use reasonable care in the labeling, marketing, selling, advertising, and promoting of Aredia® and Actonel®, and to warn Mrs. Nerzig and her medical providers of the true risk of osteonecrosis of the jaw and other side effects when using Defendants' drugs.

49.    Contrary to their duty, the Defendants failed:  adequately and properly to warn Mrs. Nerzig of the risks of serious complications and bodily harm when Aredia® and Actonel® are used in the manner for which they were intended; adequately and properly to warn Mrs. Nerzig of the risks of diseases when Aredia® and Actonel® are used in a manner for which they were intended; adequately and properly to label Aredia® and Actonel® so as to warn Mrs. Nerzig of the risks of complications and disease; and adequately and properly to label Aredia® and Actonel® so as to warn Mrs. Nerzig of the risks of osteonecrosis of the jaw, particularly when used in tandem.

17

50.    Further, Defendants failed to meet the standard of care set by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, related amendments and codes and federal regulations provided thereunder, the Sherman Food, Drug and Cosmetic Law, and other applicable laws, statutes and regulations. Defendants further failed in the following respects:

a.    The labeling lacked adequate information on the use of the drugs Aredia® and Actonel® (21 C.F.R. Section 201.56(a) and (d));

b.    The labeling failed to provide adequate warnings of severe and disabling medical conditions including, without limitation, osteonecrosis of the jaw, and other adverse medical conditions as soon as there was reasonable evidence of their association with the drugs (21 C.F.R. 201.57(e));

c.    There was inadequate information for patients for the safe and effective use of Defendants' drugs (21 C.F.R 201.57(f)(2));

d.    There was inadequate information regarding special care to be exercised by Mrs. Nerzig's doctors for safe and effective use of Defendant's drug (21 C.F.R. 201.57(f)(1));

e.    The labeling was misleading and promotional (21 C.F.R. 201.56(b)); and

f.    Defendants' acts constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331.

51.    Defendants' products Aredia® and Actonel® were unaccompanied by proper and adequate warnings regarding the risk of osteonecrosis of the jaw associated with the use of Defendants' products and the scope, severity and duration of such injuries.

52.    Despite Defendants' failure to provide adequate warnings to protect users or consumers of Aredia® and Actonel®, Defendants nevertheless continued aggressively to market, promote, distribute, and sell the dangerously defective products.

53.    As a result of Defendants' negligence and the violations of the statutes and regulations listed above, Mrs. Nerzig suffered injuries and damages as alleged herein.

54.    As a direct and proximate result of Defendants' failure to warn, Mrs. Nerzig has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

55.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

56.    Defendants expressly warranted to Mrs. Nerzig, by and through

19

statements made by Defendants or their authorized agents or sales representative, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Aredia® and Actonel® were safe, effective, fit and proper for their intended uses.

57.    In using Aredia® and Actonel®, Mrs. Nerzig and her health care providers relied on the skill, judgment, representations and foregoing express warranties of the Defendants. Said warranties and representations were false in that the aforementioned products were not safe and were unfit for the uses for which they were intended.

58.    As a direct and proximate result of Defendants' breaches of warranties, Mrs. Nerzig has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT V
## BREACH OF IMPLIED WARRANTY

59.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

60.    Prior to the time that Aredia® and Actonel® were used by Mrs. Nerzig, Defendants impliedly warranted to Mrs. Nerzig that Aredia® and Actonel® were of merchantable quality and safe and fit for the use for which they were intended.

20

Mrs. Nerzig is unskilled in the research, design and manufacture of Aredia® and Actonel®, and reasonably relied on the skill, judgment and implied warranty of the Defendants in using Aredia® and Actonel®.

61.    Aredia® and Actonel® were neither safe for their intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to their intended uses and would cause severe injuries to the user.

62.    As a direct and proximate result of Defendants' breaches of warranties, Mrs. Nerzig has developed osteonecrosis of the jaw, is at risk of developing other diseases, and has suffered compensatory damages and is entitled to punitive damages in amounts to be proven at trial.

## COUNT VI
## LOSS OF CONSORTIUM

41.    Plaintiffs repeat and reallege, as if fully set forth herein, each and every allegation contained in the above paragraphs and further allege:

42.    As a proximate cause of Defendants' wrongful conduct resulting in the injuries Plaintiffs have suffered as described herein, Mr. Nerzig has lost the spousal consortium of Mrs. Nerzig.  He will likely continue to lose his spouse's consortium in the future due to the Defendants' wrongful conduct.

43.    Accordingly, Mr. Nerzig has suffered compensatory damages in an

amount to be proven at trial. Mr. Nerzig hereby avers that the acts committed by

Defendants, and their willful and wanton acts and legal malice constitute

aggravating factors which support an award of punitive damages.

WHEREFORE, Plaintiffs pray that this honorable Court enter judgment

against Novartis, P&G, Aventis, and John Doe Corporations 1-4, and in favor of the

Plaintiffs, and to award the following relief:

a.   Award Mrs. Nerzig all damages allowed by law to compensate her for
     the physical injury, pain, suffering, emotional distress, mental anguish,
     physical disability and physical disfigurement and other losses which
     she has endured;

b.   Award Mrs. Nerzig damages equal to the amount of her medical and
     health care costs and expenses incurred to present and in the future;

c.   Award Mrs. Nerzig damages in an amount sufficient to compensate
     her for the likely future deterioration of her medical condition as a
     result of the harm she has suffered from use of Defendant's product;

d.   Award Plaintiffs damages equal to any amount of lost wages and
     earnings;

e.   Award Plaintiffs punitive/exemplary damages to the extent necessary
     and appropriate to punish and deter the conduct complained of herein;

f.   Award Mr. Nerzig damages for loss of companionship and consortium
     with his spouse;

g.   Award Plaintiffs attorneys' fees and costs, plus interest, as allowed by
     law; and

h.   Award Plaintiffs such other and further legal and equitable relief as
     this honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of this action.

VALAD & VECCHIONE, PLLC

Bart T. Valad, Esq. (DC Bar No. 462814)
John J. Vecchione, Esq. (DC Bar No. 431764)
VALAD AND VECCHIONE, PLLC
3863 Plaza Drive
Fairfax, Virginia  22030
Telephone:  (703) 352-4800
Fax:  (703) 352-4820

*Attorneys for Plaintiffs Elaine and Robert M.
Nerzig*

Dated:  November 5, 2007

23

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Elaine and Robert M. Nerzig, 50 Lorijean Lane, E.
Northport NY 11731

## DEFENDANTS

Novartis Pharmaceutical Corporation, 1 Health Plaza, East Hanover NJ;
Proctor & Gamble Pharmaceuticals Inc.; Aventis Pharmaceuticals, Inc.; John
Doe Corporations 1-4

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF        Nassau
    (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT        MORRIS
                    (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John J. Vecchione, Esq.
Bart T. Valad, Esq.
3863 Plaza Dr., Fairfax Va. 22030
(703)352-4800

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
     Plaintiff

○ 3 Federal Question
     (U.S. Government Not a Party)

○ 2 U.S. Government
     Defendant

◉ 4 Diversity
     (Indicate Citizenship of
     Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/
     Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency
     Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
     Administrative Agency is Involved)

○ **D. Temporary Restraining
     Order/Preliminary
     Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○  **E. General Civil (Other)**          OR          ○  **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
     defendant
☐ 871 IRS-Third Party 26
     USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
     of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
     Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
     Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
     Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
     Exchange
☐ 875 Customer Challenge 12 USC
     3410
☐ 900 Appeal of fee determination
     under equal access to Justice
☐ 950 Constitutionality of State
     Statutes
☐ 890 Other Statutory Actions (if
     not administrative agency
     review or Privacy Act

| ○ G. *Habeas Corpus/* *2255* | ○ H. *Employment* *Discrimination* | ○ I. *FOIA/PRIVACY* *ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

### V. ORIGIN

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

---

### VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Diversity 28 U.s.c. Sec. 1332. There is an MDL consolidation for the Aredia/Zometa portion of this Complaint i the Middle District of Tennessee

---

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ >$75,000<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instruction)   YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|

DATE  November 5, 2007   SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.